NOT FOR PUBLICATION                           [Dkt. No. 46]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

MICHAEL TROSO,

                Plaintiff,

     v.

CITY OF ATLANTIC CITY, et al.,

              Defendants.

Civil Action No.
10-CV-1566(RMB/JS)

**OPINION**

Appearances:

William H. Buckman
Surinder K. Aggarwal
The William H. Buckman Law Firm
Moorestown Office Center
110 Marter Ave., Suite 209
Moorestown, NJ 08057
    Attorneys for Plaintiff

Michael E. Riley
Law Offices of Riley & Riley
The Washington House
100 High Street, Suite 302
Mount Holly, NJ 08060
    Attorneys for Defendants

**BUMB,** UNITED STATES DISTRICT JUDGE:

    Plaintiff Michael Troso ("Plaintiff") brings this action asserting a number of claims, all arising out of an August 2008 incident in Atlantic City, New Jersey, in which he was arrested. Defendants City of Atlantic City ("Atlantic City") and Atlantic City Police Department Officers Sterling Wheaten ("Wheaten"),

Syed Shah ("Shah"), Thomas Moynihan ("Moynihan"), Joseph Kelly ("Kelly"), and Joshua Vadell ("Vadell") (and, collectively, the "Defendants") have moved for summary judgment.  For the reasons that follow, Defendants' motion is DENIED, in part, and GRANTED, in part.

I.   Background[1]

     A. Plaintiff's Arrest

On August 9, 2008, Plaintiff, then a New Jersey Deputy Attorney General, and ten of his friends traveled to the Trump Marina Hotel and Casino to celebrate Plaintiff's bachelor party. (Plaintiff's Statement of Material Facts ("Pl's SMF") ¶¶ 1, 2; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ("Defs' Res. SMF") ¶¶ 1, 2.)  While at the casino, an altercation arose involving a member of Plaintiff's party, Bill Zaun.  (Pl's SMF ¶¶ 3, 4; Defendants' Statement of Material Facts ("Defs' SMF") ¶ 3.)

Shah was on special detail at the casino at the time of the altercation and attempted to calm Zaun and remove him from the casino.  (Pl's SMF ¶ 7; Defs' SMF ¶¶ 1, 5.)  When Zaun resisted Officer Shah's efforts, Shah radioed the Atlantic City Police

---

[1]    The facts recited herein are drawn from the parties' Rule 56.1 Statements of Material Facts, Defendants' Response to Plaintiff's Statement of Material Facts and Plaintiff's deposition testimony. While there are significant factual disputes between the parties accounts, the facts are construed in a light most favorable to Plaintiff, the non-moving party.  See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004), cert. denied, 543 U.S. 956 (2004).

2

Department Dispatch, requesting assistance with a disorderly male. (Pl's SMF ¶¶ 8, 9; Defs' SMF ¶ 6.) Shah subsequently pressed his emergency button. (Pl's SMF ¶¶ 9, 10; Defs' SMF ¶¶ 7, 8.) Ultimately, Shah was able to remove Zaun from the casino. (Pl's SMF ¶ 11; Defs' Res. SMF ¶ 11.) The parties' accounts of what happened thereafter differ dramatically.[2]

### 1.  Plaintiff's Account

According to Plaintiff, Plaintiff then exited the casino, advised Shah that he had information as to what happened, and inquired as to whether Zaun would be arrested and, if so, where he could be picked up upon release. (Pl's SMF ¶ 12.) At some point after this conversation, Officers Moynihan and Kelly arrived on the scene. (Pl's SMF ¶ 15; Defs' Res. SMF ¶ 15.) When Moynihan and Kelly arrived, one of the two officers began yelling at Plaintiff, "Who the fuck are you?" (Pl's SMF ¶¶ 12, 20.)

---

[2]  Both Plaintiff and Defendants claim support for their version of events in a Trump Marina Hotel and casino security video that captures some of the events at issue. Defendants argue that this Court may depart from the usual rule that, where events are disputed on summary judgment, the non-movant's version of events must be credited. They argue that the videotape conclusively supports their version of events. However, such a departure is only warranted, where the videotape "blatantly contradict[s]" the non-movant's version of events. Bethune v. Cnty. of Cape May, Civ. No. 08 5738, 2011 WL 2037627, *3 (D.N.J. May 20, 2011)(citing Patterson v. City of Wildwood, 354 F. App'x 695, 698 (3d Cir. 2009)). Where videotape evidence is instead susceptible to multiple reasonable interpretations, it is improper to credit such evidence over the non-movant's version of events. Id. Here, because the videotape at issue is susceptible to diverse reasonable interpretations, and does not blatantly contradict Plaintiff's version of events, the videotape does not provide a basis for summary judgment based on Defendants' account. If anything, the videotape appears to corroborate Plaintiff's version of the facts.

Plaintiff responded by removing his Deputy Attorney General Badge from his pocket and showing it to the officer. (Pl's SMF ¶ 21.)  Upon seeing the badge, one of the officers became very angry, and demanded that Plaintiff put the badge away. (Pl's SMF ¶ 21.)  Plaintiff complied with the demand and contends that he was never asked to leave or move away from the scene, nor told that he was interfering in an investigation. (Pl's SMF ¶¶ 14, 22, 23.)

After Plaintiff put his badge away, either Moynihan or Kelly instructed Wheaten, who had also responded to Shah's call for assistance (Pl's SMF ¶ 10; Defs' SMF ¶ 15; Defs' Res. SMF ¶ 10), to remove Plaintiff from the area. (Pl's SMF ¶ 28.)  Shah then pushed Plaintiff into the arms of Wheaten and Vadell, who had also responded to the call. (Pl's SMF ¶¶ 10, 18; Defs' SMF ¶ 15.)  Wheaten then placed Plaintiff in a compliance hold (Defs' SMF ¶ 15), and with the assistance of Vadell, slammed Plaintiff into the hood of a parked vehicle where he was "pummeled" in the head, neck, and shoulder area by the officers' fists and arms (Pl's SMF ¶¶ 26, 28, 32, 39, 40, 46, 48, 49, 50; Defendants' Motion to Dismiss at Ex: E; Defs' SMF ¶ 15; Defs' RSMF ¶ 28, 40, 48, 49.)  Plaintiff lost consciousness for a period of time and suffered a bloody nose and mouth. (Pl's SMF ¶¶ 50, 54.)

4

Plaintiff claims that he was later approached by Wheaten, that Wheaten admitted knowing that Plaintiff worked for the New Jersey Attorney General's Office, and that Wheaten told him that, in light of having just beaten Plaintiff despite Plaintiff having done nothing wrong, Plaintiff would have to be arrested and criminally charged to protect the Defendants' interests. (Pl's SMF ¶ 56.)

Plaintiff was then arrested for obstruction of justice in violation of N.J.S.A. 2C:29-1(a) and transported to jail where he was held for several hours.  (Pl's SMF ¶ 55, 57; Defs' SMF ¶ 22.)  Wheaten signed the criminal complaint that was the basis for Plaintiff's arrest.  [Docket No. 50 at Ex. 10].

### 2.  Defendants' Account

Defendants vigorously dispute Plaintiff's account.  They contend that: (1) on Moynihan and Kelly's arrival to the scene, Plaintiff was standing next to Shah screaming and yelling at him and waiving his badge; (2) Moynihan and Kelly directed Plaintiff to step away from Shah "several times"; (3) Plaintiff ignored their directive and instead waved his Deputy Attorney General Badge in their faces and refused to leave the area; (4) Plaintiff was never struck, hit, or punched by an Atlantic City police officer; and (5) Wheaten's alleged statement to Plaintiff

never occurred.  (Defs' SMF ¶¶ 12, 13, 14, 21; Defs' Res. SMF ¶ 56.)[3]

### B.   Plaintiff's Charges Are Dismissed

The Atlantic County Prosecutor's Office subsequently downgraded the criminal complaint and returned the matter to Atlantic City Municipal Court for prosecution.  (Pl's SMF ¶ 63; Defs' Res. SMF ¶ 63.)  At a hearing on the complaint, the charges against Plaintiff were dismissed.  [Docket No. 46, Defendants' Motion to Dismiss at Ex. I].  During the hearing, Plaintiff's counsel indicated that Plaintiff had offered to stipulate to probable cause in exchange for dismissal of the complaint.  Id. at 4.  However, the municipal prosecutor rejected the offer and Plaintiff's offer to stipulate was not the basis for the complaint's dismissal.  Id. at 5 (municipal prosecutor proffering to judge that a voluntary stipulation of probable cause "was not the basis for the dismissal").[4]

### C. Plaintiff's Complaint

Plaintiff subsequently filed a Complaint in this Court. The Complaint alleges: (1) false arrest, false imprisonment,

---

[3]    As mentioned, the videotape appears to contradict much of Defendants' facts.  This, however, is irrelevant because the Court, on a summary judgment motion, must credit Plaintiff's version of events.

[4]    Defendants argue that Plaintiff's counsel, in fact, stipulated to probable cause during the hearing.  [Docket No. 46, Defendants' Memorandum in Support of Their Motion to Dismiss at 15 ("Mr. Troso had his attorney stipulate to probable cause in the Atlantic City Municipal Court.")].  That claim is flatly belied by the hearing transcript. [Docket No. 46, Defendants' Motion to Dismiss at Ex. I].

excessive force, and malicious prosecution under 42 U.S.C. §

1983 and the New Jersey Constitution and Civil Rights Act

against the individual Defendants; (2) conspiracy to falsely

arrest, falsely imprison, and maliciously prosecute under

Section 1983[5]; and (3) municipal liability under 42 U.S.C. § 1983

against Atlantic City based on an alleged failure to properly

train the individual Defendants. [Docket No. 1, Complaint].

## II.  Legal Standard

Summary judgment shall be granted if "the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a).  A fact is "material" if it will "affect the

outcome of the suit under the governing law . . . ."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is

"genuine" if it could lead a "reasonable jury [to] return a

verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of

material fact, a court's role is not to weigh the evidence: all

reasonable "inferences, doubts, and issues of credibility should

be resolved against the moving party."  Meyer v. Riegel Prods.

---

[5]      It was unclear from the Complaint whether Plaintiff's conspiracy claim
encompassed both federal and state claims.  [Docket No. 1, Complaint].
Because Plaintiff only alluded to a federal conspiracy claim in his
summary judgment briefing, this Court construes the Complaint as solely
alleging a federal claim.  [Docket No. 50, Plaintiff's Brief in
Opposition to Defendants' Motion for Summary Judgment at 30-33 ("Here,
Plaintiff has sufficiently demonstrated facts to support a conspiracy
claim against Defendants based on his Fourth Amendment claims of false
arrest/false imprisonment and malicious prosecution.")].

Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record . . . could not lead a rational trier of fact to find for the non-moving party." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265 (Brennan, J., dissenting).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed.R.Civ.P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete

evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat a motion for summary judgment.").

III. Analysis

As noted above, Plaintiff's Complaint alleges multiple claims against Defendants.  The Court first addresses Plaintiff's claims against the individual Defendants.  It then addresses Plaintiff's municipal liability claim.

A.  Claims Against the Individual Defendants

Plaintiff asserts claims of false arrest, false imprisonment, malicious prosecution, and excessive force under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act against the individual Defendants.  Plaintiff also asserts a claim of conspiracy to commit false arrest, false imprisonment, and malicious prosecution under Section 1983 against the individual Defendants.

Defendants argue that they are entitled to summary judgment based on qualified immunity and other defenses.  The Court first turns to Defendants' qualified immunity defense.

1.  Qualified Immunity

9

Defendants argue that they are entitled to qualified immunity on all of Plaintiff's claims against the individual Defendants.[6]

To determine whether an officer is entitled to qualified immunity from suit, courts ask two questions: "(1) whether the officer violated a constitutional right," and "(2) whether the right was clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lamont v. N.J., 637 F.3d 177, 182 (3d Cir. 2011)(quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)(internal quotations and brackets omitted)).  The officer seeking to invoke qualified immunity has the burden of proving its applicability.  See Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010, cert. den'd, 131 S. Ct. 1571 (2011).

---

[6]     While Defendants' opening brief raised qualified immunity as a defense only to Plaintiff's excessive force claim, their reply brief arguably could be read to raise qualified immunity as a defense to the false arrest, false imprisonment, and malicious prosecution claims also. Compare Docket No. 46 at 14-18 with Docket No. 53 at 3-4.  Courts ordinarily either decline to consider arguments raised for the first time in a reply brief or afford the non-movant the opportunity to file a sur-reply brief before granting summary judgment on a newly raised basis.  Alston v. Forsyth, 379 F. App'x 126, 129 (3d Cir. 2010)(citing authority that it is improper to consider such arguments without granting non-movant opportunity to file a sur-reply); Islam v. City of Bridgton, 804 F. Supp. 2d 190, 197 (D.N.J. 2011)("Defendant does make mention of other elements in his reply brief, but the Court will not consider new arguments raised for the first time in a reply brief that are not made in response to Plaintiff or as an extension of issues properly raised in the moving papers.").  However, this Court will consider Defendants' newly raised arguments here without further briefing.  This is because the Defendants' newly raised arguments do not provide a basis for dismissal here and, therefore, the Court can do so without prejudicing Plaintiff.

Within the qualified immunity analysis, for each of
Plaintiff's claims, Defendants only dispute the first prong.
They argue that they did not violate any of Plaintiff's
constitutional rights.  Because Defendants only argue the first
prong of the qualified immunity analysis, the Court's qualified
immunity analysis merges into an ordinary constitutional
analysis and is addressed as such below.[7] Goodman v. Harris Cty.,
571 F.3d 388, 398 (5th Cir. 2009)(where defendant did not
dispute that alleged violation of right was clearly established,
qualified immunity inquiry collapsed into ordinary
constitutional inquiry); Shrum v. City of Coweta, Okla., 449
F.3d 1132, 1145 (10th Cir. 2006)(same); Canter v. Cty. of
Otsego, 14 F. App'x 518, 522-23 (6th Cir. 2001)(same); Frigo v.
Guerra, No. 92 C 7161, 1993 WL 8762, at *2 (N.D. Ill. Jan. 14,
1993)("Where a resolution of the case is totally fact-intensive,
rather than defendants calling into question whether the
relevant standard of conduct was clearly established when they
acted, qualified immunity effectively merges with the merits
rather than being a separate defense.").

    2.   False Arrest

Plaintiff's summary judgment brief argues that Wheaten is
liable for false arrest as the actual arresting officer of

---

[7]    Even if Defendants had argued the second prong of a qualified immunity
analysis, there is nothing on the record before this Court to suggest
that the rights Plaintiff claims were violated, which are straight
forward constitutional rights, were not clearly established.

11

Plaintiff and that the remaining individual Defendants — Shah, Moynihan, Kelly, and Vadell — are liable under a bystander liability theory.

Under both federal and New Jersey law, a claim for false arrest requires that: (1) there was an arrest; and (2) that the arrest was made without probable cause. Ferry v. Barry, No. 12-009, 2012 WL 4339454, at *5 (D.N.J. Sept. 19, 2012); Gil v. N.J., No. 12-701, 2012 WL 23570503, at *2 (D.N.J. June 19, 2012)(holding that, under New Jersey law, "[t]here are two elements required to bring [a false arrest claim]: (1) constraint of the person against his will (2) that is without legal justification."); Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (N.J. 2007)(holding that probable cause is an absolute defense to a claim of false arrest under New Jersey law).

Defendants make three arguments for dismissal: (1) that they had probable cause to arrest Plaintiff; (2) that Plaintiff cannot dispute probable cause now, having offered to stipulate to probable cause previously; and (3) that Plaintiff's bystander liability claims must be dismissed because they were not pled in the Complaint.

a.   Probable Cause

Defendants contend that they had probable cause to arrest Plaintiff for obstructing the administration of law in violation of N.J. Stat. Ann. 2C:29-1(a) as a result of Plaintiff's failure

to remove himself from the scene of the investigation upon command.

The standard for probable cause is identical under federal and New Jersey law. Maples v. City of Atlantic City, No. 06-2200, 2008 WL 2446825, at *6 (D.N.J. June 16, 2008); New Jersey v. Basil, 202 N.J. 570, 585-86 (N.J. 2010)(reciting standard for probable cause to arrest under New Jersey law and citing to federal law as the basis for that standard).

In determining whether probable cause existed at the time of the arrest, the "arresting officer's state of mind" and the charges "actually invoked by the arresting officer" are irrelevant. Devenpeck v. Alford, 543 U.S. 146, 153 (2004); Jaegly v. Couch, 459 F.3d 149, 154 (2d Cir. 2006). Courts must instead objectively assess whether, at the time of the arrest and based on the facts known to the officer, probable cause existed "as to any offense that could be charged under the circumstances." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005); Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992). "The validity of an arrest is determined by the law of the state where the arrest occurred." Pollock v.

<u>Philadelphia</u>, 403 F. App'x 664, 669 (3d Cir. 2010)(citing <u>United</u>
<u>States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002))(quotations
omitted).

Accepting Plaintiff's version of events, as this Court must
on a motion for summary judgment by the Defendants, Defendants
lacked probable cause to arrest Plaintiff.  The obstruction
statute cited by Defendants as the basis for Plaintiff's arrest
provides in relevant part:

> A person commits an offense if he purposely obstructs,
> impairs or perverts the administration of law or other
> governmental function or prevents or attempts to
> prevent a public servant from lawfully performing an
> official function by means of flight, intimidation,
> force, violence, or physical interference or obstacle,
> or by means of any independently unlawful act . . .

N.J. Stat. Ann. 2C:29-1(a).

And, here, Plaintiff did not obstruct, impair, or pervert
the administration of the law prior to his arrest.  Plaintiff
did not, according to his account, yell at the officers or
ignore any instructions to leave the area.  He instead
peacefully conversed with the officers.

Accordingly, Defendants' motion for summary judgment on
this basis is DENIED.

b.   <u>Plaintiff's Offer to Stipulate</u>

This Court also disagrees with Defendants' second argument.
Plaintiff's offer to stipulate to probable cause does not
mandate dismissal of his claim.  Plaintiff cites no authority

for the proposition that an offer to stipulate to probable cause bars a subsequent claim for which lack of probable cause is an element.  And the authority that does exist that might bar a claim like Plaintiff's is inapposite.

Plaintiff's federal claims would be barred if Plaintiff either had been convicted of the offense, or if the stipulation had actually been accepted by the court in exchange for dismissal.  See Heck v. Humphrey, 512 U.S. 477, 481 (1994)(barring 1983 claims for which lack of probable cause is an element where the plaintiff was convicted); Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 777-78 (3d Cir. 2001)(finding that judicial estoppel bars a party from advancing a contrary position to one it urged a court to adopt and that is adopted).  Here, however, Plaintiff was neither convicted of the offense at issue, nor was the offer to stipulate a condition for dismissal by the court.

And even if Plaintiff had been convicted, such conviction would not provide a basis for dismissal of Plaintiff's state law claims.  With respect to New Jersey state law claims, a conviction only raises a rebuttable presumption of probable cause.  Kommendant v. Diocese of Trenton, No. L-3226-06, 2010 WL 1526262, at *8 (N.J. Super. Ct. App. Div. Apr. 13, 2010).

Accordingly, Defendants' motion for summary judgment on this basis is DENIED.

c.   Bystander Liability

This Court agrees that Plaintiff's bystander liability claim fails.  Whatever the merits of this theory on the facts before the Court, Plaintiff failed to articulate this theory in the Complaint.  [Docket No. 1, Complaint].  It was instead first raised in briefing on the summary judgment motion.  Because a plaintiff may not amend his complaint through arguments in briefing in opposition to a summary judgment motion, Plaintiff's false arrest bystander liability claim against Defendants Shah, Moynihan, Kelly, and Vadell fails.  Holland v. Simon Property Group, Inc., No. 12-2251, 2012 WL 3711869, at *3 n. 4 (3d Cir. Aug. 28, 2012).

3.   False Imprisonment

Plaintiff's summary judgment briefing on this claim is minimal, with the entirety of the briefing relegated to a footnote in a joint section on false arrest and false imprisonment.  [Docket No. 50 at 8 n. 1].  While it is unclear as to whom this claim is asserted against and the basis for each Defendant's liability, this Court assumes that the placement of the claim within the same section as Plaintiff's false arrest claim signals that Plaintiff intended to plead the false arrest and imprisonment claims in the same manner – as direct liability claims against Wheaten and bystander liability claims against the remaining individual Defendants.

16

To state a claim for false imprisonment under both federal and New Jersey law, a plaintiff must demonstrate that: (1) he was detained; and (2) the detention was unlawful." See Wallace v. Kato, 549 U.S. 384, 389 (2007); Hahn v. Bergen Regional Med. Center, 2011 WL 2472694, at *3 (N.J. Super. Ct. App. Div. June 23, 2011). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim . . . for false imprisonment based on a detention pursuant to that arrest." O'Connor v. City of Philadelphia, 233 Fed. App'x. 161, 164 (3d Cir. 2007)(quoting Groman v. Township of Manalapa, 47 F.3d 628, 636 (3d. Cir. 1995)(internal quotation marks omitted); see Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (N.J. 2000)(recognizing the existence of probable cause as a complete defense to false imprisonment).

Defendants rely on essentially the same arguments here as they raised in connection with Plaintiff's false arrest claim. For the same reasons as stated above, Plaintiff's bystander liability claim is dismissed and Plaintiff's claim against Wheaten may proceed. The former claim is barred because Plaintiff failed to allege it in the Complaint. The latter claim may proceed because, as discussed above: (1) accepting Plaintiff's version of events, Plaintiff's detention would have lacked probable cause and therefore been unlawful; and (2)

Plaintiff's offer to stipulate to probable cause does not change
this analysis.

        4.  <u>Malicious Prosecution</u>

     Under both federal and New Jersey law, a claim for
malicious prosecution requires, among other things, that the
defendant have initiated a criminal proceeding and that the
proceeding was initiated without probable cause.  <u>McKenna v.
City of Philadelphia</u>, 582 F.3d 447, 461 (3d Cir.2009) (reciting
federal law); <u>Stolinski v. Pennypacker</u>, 772 F. Supp. 2d 626, 640
(D.N.J. 2011)(reciting New Jersey law).[8]

     Defendants first argue that the malicious prosecution
claim against Shah, Moynihan, Vadell, and Kelly should be
dismissed because of their lack of direct involvement in
Plaintiff's arrest.  This Court agrees.  The only Defendant
that can be said to have initiated a criminal proceeding
against Plaintiff is Wheaten, who signed the criminal
complaint, and this Court has already rejected the notion
that Plaintiff can rely on a bystander liability theory

---

[8]    Under both federal and New Jersey state law, malicious prosecution
claims require that the criminal proceeding have terminated in favor of
the accused and a termination accomplished by compromise or agreement
is not considered a favorable one.  <u>Pittman v. Metuchen Police Dept.</u>,
441 F. App'x 826, 829 (3d Cir. 2011)(holding that withdrawal of
criminal charges pursuant to a compromise or agreement does not
constitute "favorable termination" required under <u>Heck</u> to allow 1983
claims based on lack of probable cause to proceed); <u>Mondrow v. Selwyn</u>,
172 N.J. Super. 379, 387, 412 A.2d 447 (N.J. Super. Ct. App. Div.
1987).  Here, because the dismissal of Plaintiff's charges was without
any condition, the dismissal of his charges qualifies as a favorable
termination.  <u>See Piper v. Scher</u>, 221 N.J. Super. 54, 59 (N.J. Super.
Ct. App. Div. 1987)(finding unconditional withdrawal of the charge a
favorable termination).

against the remaining Defendants.  Accordingly, the
malicious prosecution claims against Shah, Moynihan,
Vadell, and Kelly are dismissed.  This leaves only
Defendant Wheaten.

With respect to Wheaten, Defendants again argue that
the malicious prosecution claim should be dismissed because
there was probable cause for the proceeding Wheaten
initiated.  But, for the same reasons described above,
Plaintiff has presented a genuine issue of material fact as
to probable clause and, therefore, this claim may proceed.

### 5. Conspiracy to Commit False Arrest, False Imprisonment, and Malicious Prosecution Pursuant to Section 1983

Plaintiff claims that the individual Defendants conspired
to falsely arrest, falsely imprison, and maliciously prosecute
him.  To assert a federal claim under 42 U.S.C. § 1983 for
conspiracy, a "plaintiff must show that two or more conspirators
reached an agreement to deprive him or her of a constitutional
right under color of law."  LeBlanc v. Stedman, 483 F. App'x
666, 670 (3d Cir. May 2, 2012).[9]

---

[9]     While Defendants did not argue that Plaintiff failed to demonstrate the
existence of a conspiracy, there does, in fact, appear to be sufficient
evidence presented by the Plaintiff of a conspiracy.  Specifically,
Plaintiff testified at deposition that Wheaten told him that "Look, I
know who you work for.  Look what we did to your face.  We're going to
have to arrest you.  We're going to have to press [a] charge on you."
[Docket No. 50, Ex. 1 at 41:24-42:1].  From that statement, a jury
could infer that the decisions to arrest, imprison, and charge
Plaintiff were collectively made by the individual Defendants, who were
all on the scene at the time.

Defendants argue that this claim should be dismissed because Plaintiff has failed to establish the underlying constitutional violations necessary to sustain a conspiracy claim.  But, because this Court has concluded otherwise with respect to each of the three constitutional claims Plaintiff asserts, this is not a basis for dismissal here.  Therefore, Defendants' motion for summary judgment on this claim is DENIED.

6.   Excessive Force

Plaintiff makes two excessive force claims.  First, he claims that he was the victim of excessive force by Wheaten and Vadell, who Plaintiff claims restrained and then beat Plaintiff. Second, Plaintiff claims that the remaining Defendants are liable under a bystander liability theory.  The Court addresses each claim in turn.

a.   Excessive Force by Wheaten and Vadell

Defendants contend that Wheaten and Vadell did not exercise excessive force.  Under both federal and New Jersey law, a claim that excessive force was used during an arrest requires that a plaintiff show that a law enforcement officer used force that was unreasonable under the circumstances.  Graham v. Connor, 490 U.S. 386, 396 (1989)(federal law); Hanson v. United States, 712 F. Supp. 2d 321, 329-30 (D.N.J. 2010)(New Jersey state law). And, in determining the reasonableness of force used, courts balance the government interests at stake against the intrusion

20

on the individual's Fourth Amendment rights.  Graham, 490 U.S. at 396; Hanson, 712 F. Supp. 2d at 330 (indicating that New Jersey courts look to the same factors as laid out in Graham, 490 U.S. at 396).  This analysis requires careful consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

Courts also consider "the possibility that the person subject to the police action [was] themsel[f] violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officer must contend at one time."  Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004)(internal quotations and citations omitted).  In the Third Circuit, courts take into account "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force."  Rivas, 365 F.3d at 198 (citing Abraham v. Raso, 183 F.3d 279, 291 (3d Cir. 1999)).

Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

21

vision of hindsight," since "police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." Ryburn v. Huff, ---U.S.---, 132 S. Ct. 987, 992 (Jan. 23, 2012)(quoting Graham, 490 U.S. at 396–97). The court must therefore conduct its balancing test in light of the facts that were available to the officer at the time he acted. Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)(citing Maryland v. Garrison, 480 U.S. 79, 85 (1987)). However, whether a particular use of force was reasonable in a given situation usually presents a question for the jury. Rivas, 365 F.3d at 198 (citing Abraham, 183 F.3d at 290).

While it is true that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," (Graham, 490 U.S. at 396 (internal quotations and citation omitted)), in light of the facts presented here, a jury could conclude that Wheaten and Vadell used force against Plaintiff and that it was objectively unreasonable.

According to Plaintiff's account, which this Court must credit, Wheaten and Vadell forcibly removed him from the scene, threw him against a police car, and pummeled him. Given that Plaintiff was, according to his account, peacefully interacting with the Defendants and had not ignored any instructions from them, Wheaten and Vadell's force was entirely excessive.

Accordingly, Defendants' motion for summary judgment on this claim is denied.

          b.   Bystander Liability Excessive Force Claim

For the reasons discussed above, this Court will dismiss Plaintiff's bystander liability excessive force claim.

     B.   Municipal Liability

Having addressed each of Plaintiff's claims against the individual Defendants, the Court turns to Plaintiff's municipal liability claim.  Plaintiff claims that Defendant Atlantic City violated his constitutional rights by failing to train its officers on the use of excessive force.

To state a claim for municipal liability under § 1983, a plaintiff must demonstrate that the municipality had in place an official custom or policy that directly caused a constitutional violation.  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). Where the policy alleged is a failure to train, a plaintiff must show that the failure to train employees amounts to "deliberate indifference to the rights of person with whom those employees will come into contact."  Id. at 1360.  To prove deliberate indifference in the context of a failure to train regarding excessive force, a plaintiff must show that the defendant "was on notice that, absent additional specific training, it was 'highly predictable'" that the individual officers would use excessive force.  May v. Sanna, No. 09-3253, 2012 WL 1067686, at

23

*12 (D.N.J. Mar. 29, 2012).  Plaintiff may do so by showing "a pattern of similar violations that would establish that the policy of inaction was the functional equivalent of a decision by [the municipality] itself to violate the Constitution."  Id. (quoting Connick, 131 S. Ct. at 1365).

Defendants make two arguments for dismissal of this claim.[10] First, they argue that Plaintiff failed to properly plead this claim in his Complaint.  But, unlike Plaintiff's bystander liability claims, which were only asserted for the first time in summary judgment briefing, Plaintiff plainly plead this claim in the Complaint.  Specifically, Plaintiff's Complaint alleged

---

[10]  Notably, Defendants do not contest that Plaintiff has established a policy that caused the alleged constitutional violation.  Therefore, the Court will not address this issue. In any event, even if Defendants did contest this issue, Plaintiff likely has presented sufficient evidence to move forward on this claim. Plaintiff presented evidence that:

> (1) from 2005 to 2008, the Atlantic City Police Department provided its officers with hard copies of departmental policies, but did nothing, beyond having officers sign a form acknowledging receipt of those procedures, to ensure that officers were familiar with the procedures (Pl's SMF ¶¶ 68-71);

> (2) based on its own use of force reports, the Department experienced a sharp increase in the use of force by its officers from 2005 to 2008 (Pl's SMF ¶¶ 92, 94, 95); and

> (3) from 2004 to 2008, the Department sustained seven complaints of excessive force, but failed to discipline any officer on use of excessive force (Pl's SMF ¶¶ 83-88).

Based on this evidence, this Court would be hard pressed to conclude that Plaintiff's municipal liability claim should not be decided by a jury. See Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)("If the City is shown to have tolerated known misconduct by the officers, the issue whether the City's inaction contributed to the individual officer's [constitutional violation] in this instance is a question of fact for the jury.").

that: (1) Atlantic City had an obligation to properly train its officers; (2) it was deliberately indifferent to the "violent propensities of its police officers;" and (3) that deliberate indifference caused the individual Defendants to commit violent acts against Plaintiff.  [Docket No. 1, Compl. ¶¶ 20-23].  And, while Plaintiff did not provide non-conclusory factual allegations in support of this claim in his Complaint, that failure would be a basis for dismissal for failure to state a claim on a motion to dismiss, not on a motion for summary judgment.  See Spadafore v. Gardner, 330 F.3d 849, 852-53 (6th Cir. 2003)(recognizing that where sufficiency of complaint is attacked on motion for summary judgment, the court is not limited, in considering the sufficiency of a properly pled claim, to the pleadings but may consider the full record); Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987)("On a motion for summary judgment, the district court is not limited to the plaintiff's complaint, but considers all the undisputed facts, read in the light most favorable to the non-movant.").

    Second, Defendants argue that Plaintiff's claim fails because Plaintiff has failed to demonstrate an underlying violation of his constitutional rights.  But, as discussed above, Plaintiff's excessive force claim may proceed. Therefore, Plaintiff has demonstrated an underlying

constitutional violation, as required to establish a municipal

liability claim.

Accordingly, Defendants' motion for summary judgment on

this claim is DENIED.

IV.   Conclusion

For all these reasons, Defendants' motion for summary

judgment is GRANTED, in part, and DENIED, in part, as outlined

above.

                         s/Renée Marie Bumb
                         RENÉE MARIE BUMB
                         United States District Judge

Dated: March 28, 2013

26